EX 1

Case Law: DOUBLE JEOPARDY/FORFEITURE

which protects against successive punishments for the same offense. This was based on the circumstances that (1) the state tax was fairly characterized as punishment, and (2) the tax proceeding that the state initiated was the functional equivalent of a successive criminal prosecution.

▲ GARRETT v. U.S., 471 U.S. 773, 105 S.Ct. 2407, 85 L.Ed.2d 764 (1985): The Supreme Court held that a prior conviction for the substantive offense of marijuana importation does not pose a double jeopardy bar to a later CCE prosecution that uses the prior conviction as a predicate offense.

In reaching this conclusion, the Court had to determine "whether (Congress) intended that each violation be a separate offense" and consequently intended to permit prosecution for both offenses. If that was Congress's intention, a court must ask "whether a CCE offense is considered the same offense as one or more of its predicate offenses within the meaning of the Double Jeopardy Clause. Lastly, did double jeopardy bar cumulative punishments for the predicate act and the CCE."

⬥ NORTH CAROLINA v. PEARCE, 395 U.S. 711, 23 L.Ed.2d 656, 89 S.Ct. 2072 (1969): The Supreme Court held that the guarantee against double jeopardy consists of three separate constitutional protections. "It protects against a second prosecution for the same offense after acquittal. It protects against a second prosecution for the same offense after conviction. And it protects against multiple punishments for the same offense."

"(In) the imposition of sentence for the same offense after retrial, the Constitution requires that credit must be given for punishment already endured."

A more severe sentence can be imposed upon reconviction without violating double jeopardy provision. However, due process of law "requires that vindictiveness against a defendant for having successfully attacked his first conviction must play no part in the sentence he receives after a new trial. ... Whenever a judge imposes a more severe sentence upon a defendant after a new trial, the reasons for his doing so must affirmatively appear. Those reasons must be based upon objective information concerning identifiable conduct on the part of the defendant occurring after the time of the original sentencing proceeding."

PEOPLE v. GILL, 59 F.3d 1010 (9th Cir. 1995): "(The) government violates the Double Jeopardy Clause if it divides single conspiracy into multiple prosecutions." However, this is not true "(when) the defendant, rather than the government, is responsible for the consecutive trials."

After defendant successfully opposed the government's motion to consolidate his conspiracy convictions, he was tried for the second conspiracy in a separate trial. The second trial did not constitute double jeopardy.

WILLIAMS v. SINGLETARY, 78 F.3d 1510 (11th Cir. 1996): Defendant filed *habeas* action claiming his conviction for both assault and burglary with assault violated double jeopardy. The court held that if it was Congress's intention to impose cumulative punishments under separate statutory provisions for the same conduct, there is no double jeopardy violation. If that was not clearly Congress's intent, the court must determine if the violations are the "same offense" by comparing the elements of each.

The court held that assault and burglary with assault were the "same offense" since all of the elements of assault were included in the elements of burglary with assault, and "there was no clear indication of a legislative intent to authorize cumulative convictions and sentences for assault and burglary with assault." Defendant's lesser sentence was set aside.

▲ U.S. v. 3 PARCELS IN LA PLATA CTY. COLO., 919 F.Supp. 1449 (D. Nev. 1995): "(B)ecause forfeitures are viewed with judicial disfavor, strict compliance with the letter of the law by those seeking forfeiture (i.e. the United States) must be required." (Citations and internal quotation marks omitted.)

"Even claimants who acquire the disputed property for no consideration may avail themselves of this innocent owner defense. Once the government has demonstrated probable cause to believe the property is subject to seizure, the burden of proof falls upon the claimant to show by a preponderance of the evidence that he or she (a) is the holder of an ownership interest in the property and (b) was at the time of acquiring the interest ignorant of the illegal conduct giving rise to the forfeiture action. Innocent ownership status depends upon the claimant's actual, rather than constructive knowledge." (Citations omitted.)

▲ Followed   ▼ Criticized   ⬥ Followed and Criticized

*get camera papers*

499

EX-1



**U.S. Department of Justice**

*United States Attorney*
*District of Montana*

---

MICHAEL W. COTTER
United States Attorney

901 Front Street, Suite 1100
Helena, Montana 59626

406-457-5120

February 11, 2016

JB Baugus
07690-046
Greenville FCI
PO Box 5000
Greenville, IL 62246

    Re:    U.S. v. JB Baugus,
            1:2002-CR-133

Dear Mr. Baugus:

    In recent 2255 decisions, the District Court has expressed concern over this office's *Giglio* compliance in several cases prosecuted by former AUSA Jim Seykora. AUSA Seykora started in the Department of Justice in 1984, and retired in 2012. The concern raised by the District Court involves situations in which impeachment information under *Giglio* regarding cooperating witnesses may not have been conveyed to the defense – e.g., offers or promises made or other benefits provided directly or indirectly to any witness in exchange for cooperation or testimony, including dismissed charges, immunity or offers of immunity or expectations of downward departures or reduction of sentence.

    As you know, the standard for showing prejudice is materiality of the perceived due process violation. The United States Supreme Court has cautioned that: "[t]he mere possibility that an item of undisclosed information might have helped the defense, or might have affected the outcome of the trial, does not establish 'materiality' in the constitutional sense." *U.S. v. Agurs*, 427 U.S. 97, at 109-10.

    In one of the cases, *United States v. Martin Garcia*, CR-04-087, Chief Judge Richard Cebull, in denying a 2255 motion (09/2011) criticized AUSA Seykora for eliciting from a government witness during trial that the witness did not recall being made "any promises" by the United States. In fact, Seykora had given the government witness two immunity letters, after which she testified before the grand jury and was debriefed by the FBI. According to Judge Cebull, the questions and answers "left a false impression with the jury" and with the court. However, the Judge ruled that the false testimony was not material in light of the cumulative evidence admitted during the trial that led to Garcia's conviction. This ruling was affirmed on appeal by the Ninth Circuit.

    Nevertheless, in light of the court's concern and because this office is committed to ensuring that all criminal defendants receive a fair trial, we are reaching out to all defense counsel in cases tried by AUSA Seykora. The above entitled case is one which we have



**U.S. Department of Justice**

*United States Attorney*
*District of Montana*

---

MICHAEL W. COTTER  
United States Attorney

901 Front Street, Suite 1100  
Helena, Montana 59626

406-457-5120

**REVISED LETTER**                    February 23, 2016

JB Baugus  
07690-046  
Greenville FCI  
PO Box 5000  
Greenville, IL 62246

      Re:    United States v. JB Baugus,  
                1:2002-CR-133

Dear Mr. Baugus:

      In recent 2255 decisions, the District Court has expressed concern over this office's *Giglio* compliance in several cases prosecuted by former AUSA Jim Seykora. AUSA Seykora started in the Department of Justice in 1984, and retired in 2012. The concern raised by the District Court involves situations in which impeachment information under *Giglio* regarding cooperating witnesses may not have been conveyed to the defense – e.g., offers or promises made or other benefits provided directly or indirectly to any witness in exchange for cooperation or testimony, including dismissed charges, immunity or offers of immunity or expectations of downward departures or reduction of sentence.

      As you know, the standard for showing prejudice is materiality of the perceived due process violation. The United States Supreme Court has cautioned that: "[t]he mere possibility that an item of undisclosed information might have helped the defense, or might have affected the outcome of the trial, does not establish 'materiality' in the constitutional sense." *United States v. Agurs,* 427 U.S. 97, at 109-10.

      In one of the cases, *United States v. Martin Garcia,* CR-04-087, Chief Judge Richard Cebull, in denying a 2255 motion (09/2011) criticized AUSA Seykora for eliciting from a government witness during trial that the witness did not recall being made "any promises" by the United States. In fact, Seykora had given the government witness two immunity letters, after which she testified before the grand jury and was debriefed by the FBI. According to Judge Cebull, the questions and answers "left a false impression with the jury" and with the court. However, the Judge ruled that the false testimony was not material in light of the cumulative evidence admitted during the trial that led to Garcia's conviction. This ruling was affirmed on appeal by the Ninth Circuit.

Attachment-A

At least 400,000 but less than 700,000 units of Schedule I or II Depressants;
At least 25,000 but less than 43,750 units of Flunitrazepam.

(7)   At least 100 G but less than 400 G of Heroin (or the equivalent amount of other Schedule I or II Opiates);         **Level 26**
At least 500 G but less than 2 KG of Cocaine (or the equivalent amount of other Schedule I or II Stimulants);
At least 5 G but less than 20 G of Cocaine Base;
At least 100 G but less than 400 G of PCP, or at least 10 G but less than 40 G of PCP (actual);
At least 50 G but less than 200 G of Methamphetamine, or at least 5 G but less than 20 G of Methamphetamine (actual), or at least 5 G but less than 20 G of "Ice";
At least 50 G but less than 200 G of Amphetamine, or at least 5 G but less than 20 G of Amphetamine (actual);
At least 1 G but less than 4 G of LSD (or the equivalent amount of other Schedule I or II Hallucinogens);
At least 40 G but less than 160 G of Fentanyl;
At least 10 G but less than 40 G of a Fentanyl Analogue;
At least 100 KG but less than 400 KG of Marihuana;
At least 20 KG but less than 80 KG of Hashish;
At least 2 KG but less than 8 KG of Hashish Oil;
At least 100,000 but less than 400,000 units of Schedule I or II Depressants;
At least 6,250 but less than 25,000 units of Flunitrazepam.

© 2018 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

*Attachment B*

### Cocaine and Other Schedule I and II Stimulants (and their immediate precursors)*

1 gm of Cocaine =            200 gm of marihuana

1 gm of N-Ethylamphetamine =            80 gm of marihuana

1 gm of Fenethylline =            40 gm of marihuana

1 gm of Amphetamine =            2 kg of marihuana

1 gm of Amphetamine (Actual) =            20 kg of marihuana

*Yes* <u>1 gm of Methamphetamine =</u> *See EX-C*      <u>2 kg of marihuana</u>

*No* <u>1 gm of Methamphetamine (Actual) =</u>      <u>20 kg of marihuana</u>

1 gm of "Ice" =            20 kg of marihuana

1 gm of Khat =            .01 gm of marihuana

1 gm of 4-Methylaminorex ("Euphoria")=            100 gm of marihuana

1 gm of Methylphenidate (Ritalin)=            100 gm of marihuana

1 gm of Phenmetrazine =            80 gm of marihuana

1 gm Phenylacetone/$P_2P$ (when possessed for the purpose of manufacturing methamphetamine) =            416 gm of marihuana

1 gm Phenylacetone/$P_2P$ (in any other case) =            75 gm of marihuana

1 gm of Cocaine Base ("Crack") =            20 kg of marihuana

1 gm of Aminorex =            100 gm of marihuana

1 gm of Methcathinone =            380 gm of marihuana

Historical Sentencing Guidelines Manuals      1

© 2018 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

*Attachment C*

\*Notes to Drug Quantity Table:

(A) Unless otherwise specified, the weight of a controlled substance set forth in the table refers to the entire weight of any mixture or substance containing a detectable amount of the controlled substance. If a mixture or substance contains more than one controlled substance, the weight of the entire mixture or substance is assigned to the controlled substance that results in the greater offense level.   *143.9 G mix*

(B) The terms "PCP (actual)", "Amphetamine (actual)", and "Methamphetamine (actual)" refer to the weight of the controlled substance, itself, contained in the mixture or substance. For example, a mixture weighing 10 grams containing PCP at 50% purity contains 5 grams of PCP (actual). In the case of a mixture or substance containing PCP, amphetamine, or methamphetamine, use the offense level determined by the entire weight of the mixture or substance, or the offense level determined by the weight of the PCP (actual), amphetamine (actual), or methamphetamine (actual), whichever is greater.

Historical Sentencing Guidelines Manuals          1
© 2018 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

Page 21

1  I think with those rulings, the court is prepared to
2  announce its calculations and conclusions on all of these
3  issues. My determination is that the — on the drug charges,
4  Counts One and Two convictions, base level offense is
5  the drug quantities involved, two-level increase for role in
6  the offense as manager and leader, for a net offense level on
7  those charges, of 34 = 151-188
8  With regard to the conviction on Count Three, it is my
9  determination that the base offense level is 20, that there
10 is a two-point increase appropriate for injury to the victim. 22
11 An additional two-point increase for threats to the victim. 24
12 Two points for car-jacking being involved in the offense. 26
13 Two points added for role as leader or manager, and an 28
14 additional two points for obstruction of justice, for a net 30
15 offense level on conviction of Count Three of 30 = 97-121
16 With the multiple count adjustments contemplated by
17 Guideline 3D1.4, that calculation results in a net — net  32 = 121-45
18 final total offense level of 36.
19  Criminal history category, which the court has
20 determined to be appropriate in this case is a criminal
21 history category of 1. And under the guideline calculations,
22 the guideline range for sentence in this case on Counts One
23 through Three, is 188 to 235 months of custody;
24  The separate charge in Count Four relating to the gun
25 issue is a mandatory minimum term of sentence of seven years.

Page 22

1  the term by statute is seven years to life; and by statute,
2  that is to be a term of custody to be served consecutive with
3  the other offenses of conviction.
4  I believe, counsel, that that resolves all the legal and
5  factual issues that have been raised, with the exception of
6  the issue of potential departure from the guideline
7  calculation.
8  Mr. Seykora, what is the government's position on that
9  issue?
10  MR. SEYKORA: Your Honor, this particular case,
11 although the defendant appears to have reached the age of 60
12 next month, the United States believes this court should
13 consider a departure based upon the matters as set forth in
14 paragraph 159 of the presentence report.
15  As I had indicated earlier, Your Honor, that the matter
16 of stolen vehicles, and as the court indicated, other drug
17 quantities found therein are sufficient alone to support that
18 potential departure.
19  However, the additional matters regarding the '94 case
20 of taking property, the '95 case of tampering and altering
21 VIN numbers, and the 2001 case regarding an aggravated
22 assault, none of which received criminal history points,
23 should be considered by this court, along with the five
24 stolen vehicles that were located while this investigation
25 was ongoing. Never charged or convicted Not Guilty

Page 23

1  We would ask the court review the entire context of
2  paragraph 159 and all of the specific matters recorded by
3  Ms. Zink therein, and I believe a departure is warranted,
4  Your Honor.
5  THE COURT: Mr. Errebo, your response.
6  MR. ERREBO: Your Honor, I'd go back to the first
7  sentence of Mr. Seykora's speech there that Mr. Baugus is 60
8  years old and he's a criminal history category of 1. And the
9  presentence report does reflect that he was acquitted of
10 conduct previously in state court here or in justice court.
11 But he faced the law, and the jury found him not guilty of
12 those.
13  I've already talked about the other conduct or alleged
14 conduct regarding stolen vehicles and other drugs. And I
15 would ask that he be allowed to defend himself on those
16 charges as well.
17  He was acquitted of conduct here. Two of the counts
18 plus a forfeiture.
19  He is a person who has been a hard-working, tax-paying
20 citizen most of his life. And I think that the court saw the
21 evidence and saw when Mr. Baugus testified that he admitted
22 that he got involved in the use of drugs. And I believe that
23 that not only with Mr. Baugus, but many other people who come
24 before the court, that results in some aberrant behavior.
25 And I think that that's what has happened here. You've got a

Page 24

1  person who has been a life-long good citizen of Billings,
2  Montana. And he ended up getting involved in drugs, and now
3  he finds himself sitting here before this court. And he's
4  getting, obviously, with what the court has gone through with
5  regard to the guidelines so far, obviously, the punishment is
6  very severe already, and I think it more than fits the crime
7  as far as what he was convicted of by the jury, and any
8  enhancements are cumulative and unnecessary and unwarranted.
9  THE COURT: All right.
10  Thank you, counsel.
11  Well, I want to take up one other matter. And that's
12 the issue which is for the court and which is a part of those
13 considerations which the court must take into account. And
14 that's the imposition of a fine in this case. The guideline
15 range at the offense level and criminal history categories
16 that the court has determined for a fine in this case is a
17 minimum of $20,000, and by the guidelines up to $200,000,
18 except that the guidelines in this case are trumped by the
19 statutory provisions dealing with maximum fines, which place
20 the upper fine limit in this case at $4 million.
21  So we have a very wide fine range before the court:
22 Under the guidelines, 20,000 to $200,000, and under the
23 guidelines and statute, 20,000 to $4 million.
24  The court has before it uncontradicted evidence that the
25 defendant has approximately 20 rental properties. He has
  I have no properties

illegal sentence

Mark T. Errebo
P.O. Box 1716
Billings, MT 59103
(406) 245-4326

ATTORNEY FOR DEFENDANT



IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MONTANA

BILLINGS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> JACKSON BRYANT BAUGUS, ) <br> a.k.a. J.B. Baugus, ) <br> ) <br> Defendant. ) <br> _____ ) | Cause No. CR-02-133-BLG-SEH <br><br> DEFENDANT'S OBJECTIONS <br> TO PRESENTENCE REPORT |

Comes now defendant, by and through counsel, and hereby submits his objections to the Presentence Investigation Report dated February 2, 2004.

1. Defendant objects to the <u>Offense Conduct</u> section of the Report. It does not accurately reflect the testimony at trial. Defendant testified at trial and has denied the conduct attributed to him in this section.

2. Defendant objects to the <u>Relevant Conduct</u> section of the Report. The conduct described in this section does not relate to the conduct charged in the Indictment. The Indictment had nothing to do with stolen vehicles. Further, numerous other people had access to defendant's real and personal property before and after his arrest on the charges in the Indictment. Much of the evidence supporting these claims is hearsay from sources

1

that are not identified. The rest of it comes from people who knew defendant and were living on his property who have an interest in avoiding prosecution by blaming defendant.

3. Defendant specifically objects to ¶ 68 and 69, which attribute 1,461.64 kilograms of marijuana equivalent to defendant for guideline purposes. Count I of the Indictment charged defendant with possession with intent to distribute 143.9 grams of a mixture containing methamphetamine (over 50 grams of pure methamphetamine), for which the jury found him guilty. [handwritten: — Base offense Level 26] Defendant was also found guilty of Count II, possession with intent to distribute 43.3 grams of cocaine. Pursuant to the drug equivalency table in USSG § 2D1.1, the 143.9 grams of methamphetamine equates to 287.8 kilograms of marijuana, and the 43.3 grams of cocaine equates to 8.66 kilograms of marijuana, for a total of 296.46 kilograms of marijuana. This is proper amount of drugs for which defendant may be held responsible under the guidelines.

4. Defendant objects to ¶ 71-74, which claim he obstructed justice. Although defendant had ~~contact~~ [handwritten: NO] with witnesses in the case, the contact did not rise to the level of [handwritten: I did NOT have contact with any witness at all] obstruction as contemplated by USSG § 3C1.1. Application note 4(a) states the adjustment applies to "threatening, intimidating, or otherwise unlawfully influencing a co-defendant, witness or juror, directly or indirectly, or attempting to do so." Defendant did not threaten or intimidate the people with whom he had contact. No evidence exists that he unlawfully influenced anyone connected with the trial.

5. Defendant objects to ¶ 77. Because the offense conduct allegedly occurred during November, 2002, the 2002 edition of the sentencing guidelines should be used pursuant to USSG § 1B1.11.

2

6. Defendant objects to ¶ 78. The base offense level pursuant to USSG §2D1.1 should be a level 26 based on 296.46 kilograms of marijuana equivalent.

7. Defendant objects to ¶ 79. Pursuant to USSG § 2K2.4 application note 4: "If a sentence under this guideline is imposed in conjunction with a sentence for an underlying offense, do not apply any specific offense characteristic for possession, brandishing, or discharge of an explosive firearm when determining the sentence for the underlying offense." Here, defendant is subject to a mandatory minimum five years consecutive for Count IV, pursuant to 18 USC § 924(c). Therefore the specific offense characteristic is inapposite.

8. Defendant objects to ¶ 80. No evidence exists that defendant was an organizer, leader, manager or supervisor of any other participant. See § 3B1.1 application note 4. In fact, there is no evidence that anyone else was involved in the offenses of which defendant was convicted.

9. Defendant objects to ¶ 86. The base offense level should be 26.

10. Defendant objects to ¶ 88 on the same grounds as ¶ 7, above.

11. Defendant objects to ¶ 92. Even if the conduct described in this paragraph were true it does not make him a leader, manager or supervisor of criminal activity.

12. Defendant objects to ¶ 94 on the same grounds as ¶ 4, above.

13. Defendant objects to ¶ 97. The base offense level should be 26.

14. Defendant objects to ¶ 98. The combined offense level should be 28.

15. Defendant objects to ¶ 147. The guideline imprisonment range should be 78-97 months.

3

JB Baugus - 07690-046
Federal Correctional Institution
Post Office Box 5000
Greenville, Illinois 62246

February 17, 2016

RECEIVED
FEB 24 2016
U.S. Attorney's Office

Re: United States v. JB Baugus
Case Number: 1:2002-CR-133

Dear Mr. Michael W. Cotter,

I write this letter in response to your letter dated February 11, 2016. At this time I would like to notify you of my intent to address the issues you presented. Keeping in mind, First-in, first out basis.

First, I believe, without any doubt, there were a number of **Giglio** violations in my case. I also believe without any question that I can and will be able to prove those violations prejudiced my case and the outcome from start to finish.

Therefore, I now believe, and am requesting a further investigation and inquiry is required to present my case to the fullest.

With that said, I am asking you in what manner would be appropriate for me to review relevant portions of your files, so that I would be able to support my claims.

I believe without any hesitation that this further inquiry is warranted.

= 1 =

EX-3A

Baugus received a two point enhancement for being an organizer/leader, as found by the district judge. Baugus also received other enhancements with regards to the carjacking count.[1] In light of the Supreme Court decision in *United States v. Booker*, 125 S. Ct. 738 (2005), and our decision in *United States v. Ameline*, 02-30326, 2005 WL 1291977 (9th Cir. filed June 1, 2005) (en banc), we now remand for further proceedings.

**AFFIRMED; REMANDED**

certiorari

loan

---

[1] Baugus appears to only complain about the former enhancement, but the government concedes that "other enhancements may be problematic."

2004) ("A jury can infer intent to distribute from possession of a large quantity of drugs."). The instruction was not erroneous.

Baugus received a two point enhancement for being an organizer/leader, as found by the district judge. Baugus also received other enhancements with regards to the carjacking count. 1 In light of the Supreme Court decision in *United States v. Booker,* 543 U.S. 220, 160 L. Ed. 2d 621, 125 S. Ct. 738 (2005), and our decision in *United States v. Ameline,* 409 F.3d 1073, 2005 U.S. App. LEXIS 10030, 02-30326, 2005 WL 1291977 (9th Cir. filed June 1, 2005) (en banc), we now remand for further proceedings.

**AFFIRMED; REMANDED**

### Footnotes

\*\* This panel unanimously finds this case suitable for decision without oral argument. See Fed. R. App. P. 34(a)(2).

\*

This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3.

1

Baugus appears to only complain about the former enhancement, but the government concedes that other enhancements may be problematic."

© 2018 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.